THE plaintiffs, tvh© were officers in one of the legions, raised for defence of the commonwealth, by an act passed in the spring -session-of 1781, continued in service, from the time of •entering into it, until february, 1783, when they were discharged by the governor, after which time they were not required again to enter into service.
They, supposing that officers of the commonwealth’s battalions who were supernumerary by reduction of their battalions before the end of the war ? if they were not required to enter into service again, were intitled to half pay, during life, by the *244 words of the act of general assembly, passed in the may session of 1779, concerning officers, soldiers, sailors, ansi marines, (a) and also supposing themselves, by the act of 1790, giving compensation of half pay to certain officers of the state line intitled to the same compensation as the law allowed to officers of the battalions, exhibited their clames for half pay, or, in lieu of it, the commutation of five years full pay, to the auditor for public accounts, who disallowed their claims.
From his disallowance the plaintiffs appealed separately, each of them stating his case in a petition to the judges of the district court, holden in Richmond.
That court referred the case to the general- court, who certified their opinion in these terms :
{ That under the act of may, 1779, the general officers, field officers, captain'and subalterns, physicians, surgeons, and surgeons mates, then on duty, or who should afterwards be placed on duty, in the battalions at that time raised, for the continental or state service, were intitied to Half pay, unless they failed to serve until the end of the war, or being supernumerary refused xo enter again into the service on a command to that effect, or unless they were in the service of Georgia, or another state, or provided for in this respect by congress; that the respective laws, under which they have been appointed, and the act of 1790, intitle all such persons as are described in the'act of 1779, who' belonged to the state line, and who have been appointed since the passing the act of 1779, to the like allowance of half pay, provided they served to •the end of the war, or being supernumerary did not refuse to enter again into the service, on a command (o do so, and that the troops being disbanded in the month of february, 1783, and the preliminary articles of peace being signed before that period, the officers ought to be considered to have served to the end of the war.’
Whereupon the district court adjudged the plaintiffs intitled *245 to the commutation clamed by them, and ordered the auditorio issue to each petitioner a certificate accordingly.
Prom which judgement, on the prayer of the attorney general for the commonwealth, an appeal was allowed ; and
The court of appeals, on the 2 day of may, 1792, delivered, the following opinion in the case of one of the petitioners :
c That under the act of Assembly, passed in May, 1779, intituled an act concerning officers, soldiers, sailors, and marines, and all subsequent acts made respecting them, only such of the general officers of the state army, being citizens of this commonwealth, and such of the field officers, captains, and subalterns, serving in the battalions raised lor the immediate defense of this state, and such of the chaplains, physicians, surgeons and surgeons mates as were appointed to the said battalions, being citizens of this commonwealth, and not being in the service of Georgia, or any other state, and for whom congress hath not made any adequate provision, and only such of them as actualy served thence forward, or from tire time of their being commissioned, until the end of the war, unless restrained by being prisoners of war, on parole, or otherwise, and also only such of, the said officers who became supernumerary on the reduction of the said battalions and again actually entered into the said service, in same or higher rank, having been required so to do, and continued therein until the end of the war, are infilled to half pay during life, under the said acts, to commence from the determination of their command or service, when the same was duly signified to them by the governor, or executive of this slate, and their regiments disbanded in persuauce thereof, after the preliminary articles of peace between America and Great-brilain were signed and notified to the executive óf this stale, which appears, by the procedings in council, in evidence in this case, to have been on the 19 dayof april, .1783, and the army disbanded in persuan.ee thereof on the 22 of the said month, and it appearing by the petition of the appellee, that he was a supernumerary officer, and discharged as such on the 9 day of iebruary, 1783, before the said preliminary articles were notified, and the legion, to which he belonged, disbanded as aforesaid, and that he did not again enter into service and continue therein until the end of the war, this court is of opinion, that he is not inti tied to half pay for life, and that the opinion of the general court, and order of the district court thereon, are erroneous:’ therefore.
The order of the district court was reversed, and the disallowance by the auditor affirmed, to which was added this entry; c but this judgement is not to bar or prejudice any future clame of the appellee, made on fuller proof to the auditor.’
*246 Several of the parties, Avhose clames Avere decided by the ■ court of appeals not to be maintainable,- nevertheless, exhibited the same clames again to the auditor, supposing the entry subjoined to the judgement of reversal to have reserved to them liberty to do so.
The clames Avere again disallowed by the auditor, and from that disallowance the clamants appealed to the high court of chancery, prosecuting their appeal by way of original bill against the attorney general, the treasurer, and the auditor, who were made defendents, and of whom the last only answered, disclosing hoAvever nothing more than Avhat appeareth in the foregoing state of facts.
The cause came on, before the H. O. 0. by consent of parties, to be heard in October, 1793.
The court at first haesitated to interpose in the matter, first, because it seemed proper to be brought before the common laAV court, and, secondly, because the clames, which the court of appeals permitted to be made again to the auditor, Avere permitted to be made, on fuller proof; but no proof Avas noAV exhibited more than or different from what was exhibited before the court of appeals, the first difficulty was removed by the ansAver of one defendent, which did not except to the jurisdiction of the court of equity, and by the consent of the other defendents that the cause should be heard on its merits by that court, the other difficulty was removed by this consideration: the facts stated by the' clamants in their petitions of appeal to-the' district court were aH admitted to be true by the attorney general, Avho Avas the proper party to controvert the facts, if they had not been true, and whose admission is equivalent to the fullest proof, fuller proof being therefore impossible, those terms in the reservation subjoined to the reversing judgement were supposed to have been used inadvertently, and the reservation was understood in the same sense as if it had not contained them :• and the court of chancery delivered the' following
OPÍÑÍON:
‘That by the words in the act of general assembly of the may session, in the year 1779, intituled an act concerning officers, soldiers, sailors and marines, ‘officers who have or shall become supernumerary on the reduction of battalions and shall again enter into the service, if required so to do, and continue therein until the end of the Avar, shall be intitled to half pay during life, to commence from the determination of their command or service,’ the officers intended to be provided for were of two classes; one, those who had continued in the service *247 until their battalion was reduced, and their command determined, and were not required to enter again into the service: and the other, those who, after the reduction of their battalion, were required to enter, and did enter, again into the service, and t-ontinued in it until the end of the war; and that the said words ought to be interpreted thus : officers who have or shall become supernumerary shall be intitled to half pay during life, to commence from the determination of their command, if they were not required to enter again into the service and refused to do so; and officers who have or shall become supernumerary and shall again enter into the service if required so to do, shall be entitled to half pay during life, to commence from the determination of their service because, by any other interpretation, the words, ‘command or,’ in the last member of the sentence would not only be superfluous but have no meaning; and because the words, although they may be interpreted in another sense, ought to be interpreted in a sense most beneficial for the officers whom the general assembly were inviting into their service by offers of gratuities the most liberal in their power to make, but this court is of opinion that by the latter part of the actof general assembly, made in the year 1790, intituled An act giving compensation of half pay to certain officers of the state line, such of the petitioners as belong to the first of the two classes before mentioned are so distinguished from offiecrs of the pther class that the petitioners are not intitled to half pay by that part of the act, although the court can not believe that the general assembly intended to deprive them of it, being unable to divine any reason for the distinction. Nevertheless this court is of opinion that by the former part of the last mentioned act the officers, who were discharged by proper authority, and not required to enter again into service, after the 30 day of november, in the year 1782, that is in fbbruary following, are intitled to their half pay no less than those who were not discharged before 22 day of april, in that year, to whom the compensation for half pay hath been allowed ; because the former may be said, with as much propriety as the latter, to have continued in the service until the end of the war, since they were in the service on the said 30 day of november, when the provisional articles between the united states of America and the king of Great-britain were done, by the seventh article whereof it was agreed that there should bo a peace between those parties, and their respective citizens and subjects, and that all hostilities should cease, and by the ninth article restitution was agreed to be made of whatever might be conquered by the arms of either from the other before the arrival of those articles in America : *248 whereas if the end of the war was not before the definitive treaty of peace between the same parties, which was done the 3 of September, 1783, those officers who were discharged before that day, that is those who were discharged on the 22 day of aprd, 1783, had not served until the end of the war
And decreed the auditor to allow half pay for life, or, in lieu thereof (b) five years commutation, to such of the plaintiffs as should appear to be iutitled thereto according to the foregoing opinion.
From which decree the defendents, on their prayer, were allowed art appeal.
In justification of this opinion, which differeth from that of the court of appeals, upon the later are submitted these
REMARKS.*
The opinion of the court of appeals consists of these propositions :
1. Officers who continued in the service until the end of the war, are intitled to half pay during life, to commence from the determination of their service.
2. Officers, who were restrained, by being prisoners of war, or on parole, or otherwise, from continuing in the service until *249 the end of the war, are Milled to half pay during life, to commence from the determination of their command, this proposition is not explicitly stated, but is implied in the opinion.
3. Officers, who became supernumerary on reduction of their battalions, and again entered into the service, having been required so to do, and continued therein until the end of the war, are Milled to half pay daring Me, to commence from the determination of their service.
4. Such supernumerary officers as did not enter, although they were not required to enter, again into the service, are not iutitled to half pay during life. This proposition, follows from the word ‘ only’ in that part of the opinion from which is formed the next preceding proposition.
5. Officers to be iutitled to half pay during life, must have continued in the service until the signature of the provisional articles, here'called the preliminary articles, of peace between the united states of America and the king of Great-britain, was notified to the governor of the commonwealth, and duly signified by him lo the officers.
The first proposition is admitted by all. and upon it partly is founded the decree of the high court of chancery, as is there explaned.
The second proposition may be doubted until the statute can be shewn, by which half pay for life was promised to those officers, who were hindered, by being prisoners of war, or by being on parole, OR were hindered OTHERWISE, from continuing in the service until the end of the war. but if the proposition be true, the conclusion from it is thought to be opposite to the conclusion drawn by the court of appeals, for if an officer hindered from continuing in service until the end of the war, by being a prisoner, or on parole, OR hindered OTHERWISE, be Milled to half pay ' during life, a supernumerary officer, who not being required to enter again into the service, is hindered from continuing in the service until the end of the war, no loss efi'ectualy than the officer who is an immured captive, or is enlarged on parole, seems no less intitled.
The third proposition is true, but the plaintiffs cannot intitle themselves by it; because, if they were properly supernumerary officers, they did not, after they became so, enter again into the service.
The fourth proposition is founded, as is conceived, in a misconstruction of the act of 1779.
Two arguments are stated in the decree of the court of chancery, to prove that the act ought so to be expounded as to in title the supornumery officers who were not required, after redaction *250 of their battalions, to enter again into the service, to half pay during life ;■ first, that, otherwise, the words, ‘command or,’ in the act, would have no meaning, as will ■ be manifest to one who reads the act without those words ; for he will see, if they be left out, it hath exactly the meaning which the court of appeals, have given to it, with them ; whereas the words, ‘command or,’ applied to supernumerary officers, not-required to enter again into service, are significant: second, that the act, if it could be expounded in two senses, ought to be expounded in the sense which is most beneficial to the officers, for the reason there mentioned, to which, after premising that the act of 1779, in its nature, is a compact* between the commonwealth and the officers, the author of that decree,' now adds, thirdly, the parties entering into the compact may resonably be supposed to have treated and concluded in some such form as this :
COMMONWEALTH.
We agree to allow to you officers, who will serve us in our army until the end of the war, half pay, during your lives, to commence from the determination of your service.
OFFICERS.
We are willing to serve for the stipend you offer, but you may deprive us, or some of us, of it, by disbanding your army, or part of it, before the end of the war.
COMMONWEALTH.
If we disband our army, or part of it, before the end of the war, we will allow to you, who thereby become supernumerary, half pay during your lives to commence from the determination of your respective commands : but upon this condition, which no doubt you will think just, that you shall enter again, if we require you to enter again, into our service, and continue therein until the end of the war, in which last case your half pay shall commence from the determination, not of your command but, of your service.
OFFICERS.
To all this we agree ; and accordingly we enter into your service. whether the act of 1779 ought not to be expounded, as such articles would have been expounded ? is referred to the candid and judicious, fourthly, where one party hindereth another from performing a duty, by which he would earn a reward, the *251 hindrance is in fraud of the party willing to perform ; from which fraud he who practiseth it ought not to derive benefit, nor ought the other to loso that to which he would otherwise have been intitled. and in this case the commonwealth hindered the officer from performing the duty by which he would have earned a reward, and, fifthly, the words of the-act, ‘if, being required again to enter, they again do enter, into the service, and continue in it until the end of the war,’ seem the denuutiation of a penalty for breach of duty, the half pay would be earned by service before the officers became supernumerary. but, to secure their future service, if it should be requisite, they should forfeit the half pay, if they failed afterwards to perform another duty enjoined, this duty was again entering into the service, if they Were required, and continuing in it until the end of the war. but if they were not required again to enter into the service, no duty was enjoined to be performed, and consequently by failure to perform the duty no forfeiture was incurred.
Therefore that the plaintiffs, if they had been officers in the battalions, for whom tlie act of 1779 provided, upon the supposition that they were supernumerary officers, would have been intitled to half pay, is thought to be evinced.
But they are believed not to have been comprehended in that act, nor to be intitled to the half pay, which it allowed to officers in the battalions,unless it be by the act passed in 1790, giving the compensation of half pay to certain officers of the state line.
The words of that act are, ‘that the same compensation of half pay should be extended to those officers of the state line who continued in actual service to the end of the war, as was allowed to the officers of the continental line ; and also to those who became supernumerary, and, being afterwards required, did again enter into actual service, and continue therein to the end of the War.’
The act, in the latter part of it, includeth supernumerary officers, who did again enter into actual service, only; and consequently doth not include the plaintiffs, who confess themselves not to have entered again into the service.
If then the plaintiffs be intitled to half pay, it must be by the former part of this act, that is, they must have been, not supernumerary officers but, officers who continued in actual service to the end to the war. so that whether this can be praedicated of them? is the question, which will lead us to consider
The fifth proposition of the court of appeals.
The plaintiffs 'are admitted to have been in actual service be *252 fore and on the 30th day of november, 1782, when the provisional articles rvere done, and to have continued in the service until february afterwards, when they were discharged by order of the executive.
If the war ended when those articles were done, the plaintiffs, by the terms of the act, by the terms of the compact, if the act of 1779 be in the nature of a compact, and by the terms of the act of 1790, rvere intitled to their half pay, to commence from february, 1783, the determination of their actual service.
The provisional, articles prove the war to have been ended by that act.
The articles indeed were not to he conclusive until the terms of a peace should be agreed upon between Great-britain and France, hut when those terms were agrbed upon the articles were conclusive, and they were an act of the day on which they were done, not of the day on which the terms of peace between Great-britain and France were agreed upon, if the terms of peace between Great-britain and France had not been agreed upon, the provisional articles would not have been in force 'from the begining; this being true, its converse, if the terms of peace between Great-britain and France were agreed upon, the provisional articles were in force from the begining, must also be true, yea, the court of appeals their-selves in this opinion admit the war to have been ended by those articles, for,
If the war was not ended by the proyisional articles, it was not ended before the definitive treaty in September, 1783 ; (c) but the court of appeals have allowed those officers who were in service until april, one thousand seven hundred and eighty three, to he intitled to half pay, and therefore the war to have ended when the provisional articles were done, (d)
If the war was ended by the provisional articles why are not the officers who continued in the service until the signature of those articles, including the plaintiffs, intitled to their half pay? because, say the court of appeals, officers, tobe intitled to half pay, must have continued in ike service until the signature of the articles was notified to the governor and signified by him to the *253 officers, (e) did the common wealth agree with the officers that they should not he mtitlod to half pay, unless they would continue in service until such notification and signification ? do the statutes declare so? when the statutes had enacted, that officers who continued in service until the end of the war, should receive half pay daring lile, can any court, without assuming the power to change the law, determine, that the officers shall not receive half pay, although they shall have served until the end of the war, unless they shall moreover have continued in the service until a notification to the governor, that the war was ended : and this too, notwithstanding the officers continued in service until they were discharged by the governor, and were not required to enter into it again ? and hath any court, power io change the law? if these questions be answered negatively, as probably they will be, the principal question, namely, whether officers, who continued in sendee until the provisional articles were done, and afterwards until they were discharged, be in-titled to half pay, must be answered affirmatively.

 ‘ All general officers of the army being citizens of this commonwealth, and all field officers, captains, and subalterns, commanding, or who shall command in the battalions of this commonwealth on continental establishment, or serving in the battalions Taised for the immediate defense of this state, or for the-defense of the united states: and all chaplains, physicians, surgeons, and surgeon’s mates, appointed to the said battalions, or any of them, being citizens of this commonwealth, and not being in the service of Georgia, or any other state, provided-congress do not make some tantamount provision for them, who shall serve henceforward, or from the time of their being commissioned, until the-end of the war; and all such officers who have, or shall become supernumerary on the reduction of any of the said battalions, and shall again enter into the said service if required so to do, in the same or any higher rank, and continue therein until the end of the war, shall he intitled to half pay during life, to commence from the determination of their command or service.’ 1779 c. 4.

 This alternative was inserted because the court of appeals, as was said, and seemed admitted, had allowed it iu some cases where the clames for half pay were sustained. •

 The Chancellor’s remarks are on the appeal from the decision of the General Court. The appeal from his decision was not determined till after his work was published.
On appeal, the decree of the High Court of Chancery was unanimously reversed in 1797. See the ease, Innis, Attorney General, &c., v. Roane and als.. 4 Call, 379, which decides,
“ The proclamation of government is the only evidence that war is at an end, and peace established. (
“ For the constituted authorities are the arbiters of peace and war; and their declaration that war is ended is decisive; and no averment lies against it.
“ Therefore, the supernumerary officers, who retired after the date of the preliminary articles between Great Britian and the U. States, and before peace was announced by proclamation, were not entitled to the half pay promised by the act of 1779, to those who served to the end of the war.
“ The half pay promised by that statute was a bounty ; and therefore the officers who claim it, must show exact performance, by having returned into service when called, and serving through the whole war afterwards.
“For substantial performance never entitles to a bounty,as the claimant has no equity.
“ There can be no contract without mutual obligation.
“If a judgement of reversal states that it tis not to bar or prejudice any future claim of the appellee, made on fuller proof to the auditor,’ and the new cate does not differ from the former, the first judgement concludes the cause.” — Ed.

 No man will pretend that the proclamation by the governor of Virginia, one of thirteen confederated states, could end the war which was prosecuted by the brilish king against all those states united; and if the war ended not by the governors preclamation, it must have ended by the provisional articles, or the definitive treaty.

 This is not a mere argumentum ad homines, but is conclusive in this ease; the supreme court, by determing those officers to be intitled who did not continue in the service until the definitive treaty, having implicitly decided the war to have ended before.

 By this doctrine, the officer, who was unluckily discharged a few weeks, or a lew minutes, before official notification of the peace to the executive, instead of bring gratified by enjoyment of those delectable things, the promise of which bad tempted him to enter into the service of the commonwealth, and encouraged him to continue, so long as they would permit him to continue, in their service* with the thirst and appetite of Tantalus,
Nec bibit inter aquas, nec poma natantia carpit. — Petronius Arh.